**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN F. GRAHAM, SR.** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:17-CV-00536** |
| | § | |
| **CRAIG A. HUFFMAN, SAEED "SAM"** | § | |
| **TALARI, and HEMPTECH CORP.,** | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE COURT:

Plaintiff John F. Graham, Sr. brings this complaint against Defendants Craig A. Huffman, Sam Talari, and HempTech Corp. and alleges as follows:

## I.   NATURE OF THE ACTION

1.   Plaintiff John F. Graham, Sr. files this lawsuit due to Defendants' interference with his property rights in his rightfully owned stock and to require Defendants to provide all documents and instructions to the transfer agent necessary to allow him to sell his shares on the open market.

2.   Graham is an entrepreneur and the founder of a company which became Building Turbines, Inc. ("BLDW"). In late 2015, he asked Craig Huffman, BLDW's longtime attorney, for help in selling the company. Huffman found a buyer—HempTech, Corp.—and drafted an exchange agreement under which Graham provided his BLDW shares and in return he would receive HempTech shares ("Exchange Shares"). Huffman represented both Graham and HempTech on the transaction.

3.   Graham entered into the Exchange Agreement based on Huffman's representation regarding the transferability of those shares. He relied on Huffman's representation that the Exchange Shares would be freely transferrable on over-the-counter markets six months after he

received them because they would then fall within SEC Rule 144's safe harbor from the Securities Act requirement that they be registered prior to sale. After six months passed, however, both Huffman and HempTech's CEO Sam Talari claimed that Graham would have to wait another six months before he would be able to sell the shares. Graham relied on their representations in not pursuing a sale or otherwise enforcing sale rights while he waited for this one-year period to expire.

4.      As the one-year mark approached, although Huffman initially indicated that he would provide an opinion letter to facilitate sale, he and HempTech later took the position that it was unclear whether the Exchange Shares could be sold over the counter while complying with Rule 144.

5.      Graham has satisfied Rule 144, and the Exchange Shares should be able to be sold over the counter without violating the Securities Act. Graham is unable to sell his shares, however, because HempTech and Huffman wrongfully refuse to instruct the transfer agent accordingly and refuse to provide a legal opinion as to their transferability. Meanwhile, HempTech's stock price continues to decline. Graham files suit to recover for such wrongful acts and to enforce his property rights in these shares.

## II.      PARTIES

6.      Plaintiff John Graham ("Graham") is an Austin, Texas resident.

7.      Defendant Craig A. Huffman ("Huffman") is a Tampa, Florida resident. Huffman may be served at his residence at 11915 Meridian Point Drive, Tampa, Florida 33626.

8.      Defendant Saeed "Sam" Talari ("Talari") is a resident of St. Petersburg, Florida. Talari may be served at his residence at 750 4th Ave. S., St. Petersburg, Florida 33701.

9.      Defendant HempTech Corp. ("HempTech") is a Nevada corporation with a principal place of business at 10901 Roosevelt Blvd., Building C, Suite 1000, St. Petersburg, Florida 33716.

HempTech may be served through its registered agent Paracorp Incorporated, 318 N. Carson St. #208, Carson City, NV 89701.

### III.     JURISDICTION AND VENUE

10.     This Court may exercise diversity jurisdiction because there is complete diversity between Graham and all Defendants and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332. The Court may also exercise federal question and supplemental jurisdiction because some of the asserted claims arise under federal law and because the remaining claims are part of the same case or controversy. 28 U.S.C. §§ 1331, 1367.

11.     Personal jurisdiction is properly exercised over Defendants because they have sufficient minimum contacts with Texas such that the maintenance of suit in Texas does not offend traditional notions of justice and fair play. Defendants purposefully directed their activities toward Texas; availed themselves of the benefits and privileges of conducting said activities in Texas; and the controversy arises out of or is related to these contacts with Texas.  Defendants purposefully obtained investment for HempTech from Texas-based investors, including Graham, and the claims arise out of or relate to such purposeful contacts with Texas and its residents. Defendants contracted by mail or otherwise with Plaintiff and the contracts called for performance, in whole or in part, in this state. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1). HempTech contracted with Graham through Exchange Agreement, which was partially performed in Texas, and the claims arise out of or relate to the Exchange Agreement. In addition, Defendants committed torts in whole or in part in Texas. *See id.* § 17.042(2). Huffman solicited BLDW's business in Texas and became Austin-based BLDW's lawyer after Graham met him at a meeting in Houston. When Graham told Huffman he wanted to sell the Austin-based company, Huffman found the buyer—HempTech—

and arranged the transaction under which Graham exchanged his BLDW shares and in return he received HempTech shares. Huffman, who represented both Graham and HempTech on the transaction, made misrepresentations in Texas as to the transferability of the Exchange Shares. Such misrepresentations were not only made on his own behalf, but also made as an agent of HempTech and Talari. Likewise, Talari, both on his own behalf and as an agent of HempTech, made misrepresentations regarding the transferability of the Exchange Shares which were directed into Austin, Texas.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district and because it is where a substantial amount of the property that is the subject of the action is situated. The Exchange Agreement was partially performed in Austin. The fraud and misrepresentations which are the subject of this Complaint were made through email and telephone calls directed into Austin. Additionally, stock certificates representing ownership of the stock which is the subject of this Complaint are held in Austin.

## IV.     FACTS

13.     John F. Graham, Sr. is an Austin entrepreneur.  One of the companies that Graham founded was the Austin-based company Building Turbines, Inc. ("BLDW"), which focused on rooftop turbines.

14.     Craig Huffman acted as BLDW's attorney for years and was listed as its counsel on disclosures filed with the over-the-counter market on which BLDW's stock traded.[1]

15.     Toward the end of 2015, Graham decided he wanted to sell BLDW and asked for

---

[1] Graham recently learned that Huffman is on the OTC Markets' Prohibited Attorneys list. *See* Ex. A: OTC Markets Prohibited Attorneys List.

Huffman's help in selling the company. In short order, Huffman located a buyer: HempTech Corp. Huffman told Graham that HempTech wanted to have its stock trade on the over-the-counter markets and would use a series of securities transactions involving BLDW in order to do so. BLDW eventually changed its name to HempTech.

16.     Huffman structured the transaction as a stock exchange under which Graham would tender his BLDW shares and in return he would receive HempTech shares. Huffman drafted the agreement under which this exchange would occur (the "Exchange Agreement") and advised Graham on the transaction. Huffman also represented HempTech on the transaction.

17.     The Exchange Agreement contained the following provision concerning the transferability of the shares Graham was to receive under the Exchange Agreement (the "Exchange Shares"):

> 2a. Limitation on Sales.  All such shares as issued as the Exchange Shares, to include those issued pursuant to the Non-Dilution Agreement and those shares designated by Graham to be issued to other parties from such initial 9.9%, shall be subject to, as a group to the one percent dribble out rule of Rule 144 for such sale or transfer for a period of two years after the Closing and initial issuance. Such shares shall be so designated through the transfer agent and to any brokerage where such shares shall be held or deposited.[2]

18.     Before Graham entered into the Exchange Agreement, Huffman advised Plaintiff that the Exchange Shares would be freely transferrable on over-the-counter markets once they had been held for six months after HempTech's issuance of the shares. Graham entered into the Exchange Agreement in reliance on this representation. He understood that he would be able to sell HempTech shares on the open market within a matter of months. Huffman never advised Graham that he might have to hold the Exchange Shares for longer than six months after HempTech's issuance.

19.     Graham tendered to HempTech his BLDW shares in accordance with the Exchange

---

[2] *See* Ex. B: Exchange Agreement, ¶ 2a.

Agreement. Those shares were represented by various stock certificates under his control. The last date of issuance of such shares was June 17, 2015, and any consideration provided in exchange for any of those shares was provided before that date. Graham tendered the stock certificates representing those shares to HempTech on or about March 7, 2016.

20.     Graham received Exchange Shares which are represented by two stock certificates: HempTech Stock Certificate No. 1891, dated April 18, 2016, representing 1,625,395 shares of common stock, and HempTech Stock Certificate No. 1908, dated June 8, 2016, representing 1,280,165 shares of common stock.[3] Both stock certificates contain the following restrictive legend: "The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended. The shares have been acquired for investment and may not be offered, sold, or otherwise transferred in the absence of an effective registration statement with respect to the shares or the exemption from the registration requirements of said act that is then applicable to the shares, as to which a prior opinion of counsel may be required by the issuer or the transfer agent." These stock certificates were issued to Plaintiff subsequent to the Exchange Agreement being signed and imposed additional requirements, beyond what had been set forth in the Exchange Agreement, for the selling of these securities.

21.     After execution of the Exchange Agreement, in recognition for Huffman's work on the transaction, Graham designated Huffman to receive 100,000 of the Exchange Shares and provided Huffman with additional stock which was under Graham's control. Graham also paid just under $10,000 in filing fees out of pocket in order to effectuate the terms of the Exchange Agreement.

22.     In September 2016, as the six-month mark after HempTech's issuance of Stock Certificate

---

[3] Graham subsequently designated other individuals and entities to receive the remainder of the Exchange Shares.

No. 1891 approached, Graham requested that Huffman provide a legal opinion as to the transferability of the shares that would allow him to deposit the shares with a transfer agent and sell a portion of them on the open market. During a telephone call in September 2016, however, Huffman informed Graham that the applicable holding period would be one year after HempTech's issuance, not six months, because BLDW had not timely filed financial reports with OTC Markets.

23.    Talari also told Graham that he would have to hold all his Exchange Shares an additional six months, writing in an email to Graham dated October 12, 2016, "1 year hold is minimum."

24.    In reliance on Talari and Huffman's representations that he would have to hold his Exchange Shares for one year after HempTech's issuance, Graham did not continue to try to sell a portion of the shares or file suit to enable him to sell in October 2016.  Instead, he decided to wait an additional six months. Based on their representations, Plaintiff understood that Defendants would take all necessary action for Plaintiff sell stock received pursuant to the Exchange Agreement once an additional six months had passed. He also understood, based on these representations, that HempTech would not try to block such sale.

25.    In late 2016, Huffman and Talari began expressing increasing concern about flooding the market with HempTech shares and repeatedly told Graham that he would need to "go easy" and "be careful" with regard to any sale. Yet, Defendants never indicated to him that they would take the position that Graham would not be able to sell a portion of the stock represented by Stock Certificate No. 1891 one year from the date on that stock certificate.

26.    On March 28, 2017, Graham emailed Stock Certificate No. 1891 to Huffman and requested that Huffman draft an opinion letter regarding the transferability of those shares, as well as other shares, so that he would be able to deposit the stock with a transfer agent and start selling a portion of that stock on April 18, 2017.

27.     Huffman responded by email on March 28, 2017 and wrote, "Will start framing these now."

28.     In mid-April 2017, however, Huffman began taking the position, on behalf of HempTech, that it was still unclear whether the terms of Rule 144 had been met and therefore the Exchange Shares could be freely traded, and he indicated that the Exchange Shares would need to be held for an additional period of time. In so doing, he took a position adverse to Graham and which contradicted his prior representation to Graham that the shares would be freely tradeable no later than six months or one year after their issuance by HempTech.

29.     HempTech, Talari, and Huffman's representations regarding the applicability of Rule 144 to the Exchange Shares were incorrect. Under a proper application of Rule 144, Graham, as a non-affiliate[4] of HempTech, a non-reporting company,[5] was only restricted to a one-year holding period for the Exchange Shares. Further, because Graham received the Exchanges Shares by exchanging BLDW shares, he was permitted to "tack" the period he held the BLDW shares on to the period he held the Exchange Shares. Accordingly, the Exchange Shares should have either been immediately transferrable based on the tacking rule or, if the tacking rule did not apply, transferrable one year after Graham gave the consideration for those shares by tendering BLDW to HempTech, which he did on or about March 7, 2016. Whether or not BLDW or HempTech was current in any reporting obligations with OTC Markets would not affect the applicable holding period for the shares under Rule 144.

30.     During the time period that Graham has waited to sell his portion of the Exchange Shares,

---

[4] Graham is a minority shareholder in HempTech, does not hold any officer or board positions, and resigned any such position held through BLDW in or around March 2016 as part of the terms of the Exchange Agreement.

[5] Neither HempTech nor BLDW was required to file reports with the SEC under Section 13 or 15(d) of the Securities Exchange Act.

HempTech's stock price has declined. The stock was initially trading around $4 to $5 per share in the spring and summer of 2016. It climbed to between $6 and $7 per share around October 2016 and to a high of $11.50 per share in late November 2016. Since January 2017, however, its price has been on a downward slide, and it is currently trading at around $2 per share.

## V.   CAUSES OF ACTION

31.     All conditions precedent to Plaintiffs' right of recovery have occurred or been waived or excused.

32.     If and to the extent they conflict, the following causes of action and allegations are pleaded in the alternative.

33.     Each of the foregoing paragraphs set forth in Section IV above is incorporated by reference into each of the below-listed causes of action as though fully set forth in that cause of action.

### COUNT ONE: VIOLATION OF EXCHANGE ACT SECTION 10(b) AND RULE 10b-5
**(against all defendants)**

34.     In their dealings with Plaintiff, Huffman, Talari, and HempTech have a series of ever-changing material representations pertaining to securities issued to Plaintiff, including:

    (1)     That the Exchange Shares would be freely transferrable six months from the date of HempTech's issuance;

    (2)     That the Exchange Shares would be freely transferrable one year after the date of HempTech's issuance; and

    (3)     That the only terms or conditions pertaining to Plaintiff's sale of securities issued to him were set forth in the Exchange Agreement.

35.     When Huffman, Talari, and HempTech made these representations, they made them with a wrongful state of mind, intending to induce Graham enter into the Exchange Agreement and then to delay or impede any sale of his shares although there was no legal ground to do so.

36.     These representations were made in connection with the purchase or sale of a security. Specifically, they were made in connection with and related to Graham's tender of BLDW shares in exchange for HempTech shares.

37.     Graham relied on these representations by entering into the Exchange Agreement, by not immediately pursuing a sale of a portion of the Exchange Shares, and by refraining from continuing to sell the Exchange Shares six months after HempTech's issuance. He also relied on these representations by not taking action to enforce his right to sell these shares earlier.

38.     Graham has suffered economic loss as a result of such misrepresentations, and such loss was caused by these misrepresentations. But for the misrepresentations, Graham would have taken action to enforce his rights sooner and been able to sell Exchange Shares on the over-the-counter markets sooner, while the stock price was higher.

## COUNT TWO: VIOLATION OF THE TEXAS SECURITIES ACT
### (against all defendants)

39.     Defendants offered or sold securities by means of untrue statements of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, including:

(1)     That the Exchange Shares would be freely transferrable six months from the date of HempTech's issuance;

(2)     That the Exchange Shares would be freely transferrable one year after the date of HempTech's issuance; and

(3)     That the only terms or conditions pertaining to Plaintiff's sale of securities issued to him were set forth in the Exchange Agreement.

40.     Defendants have now take the position that the Exchange Shares must be held longer than one year after HempTech's issuance and are actively blocking Graham from selling his shares on

the open market. In fact, such shares should have either been freely transferrable upon HempTech's issuance or Graham should have been able to sell them by at least March 7, 2017, and Defendants misrepresented their transferability.

41.    Each Defendant is an aider and abettor of violations committed by other Defendants. Defendants, acting with at least general awareness of their role in the violation, rendered substantial assistance to other Defendants on such violation, and they either intended to deceive Graham or acted with reckless disregard for the truth of the representations made by the primary violator.

42.    Talari also has control person liability for such violations committed by the other Defendants because he exercised control over the operations of the corporation in general and had the power to control the specific transaction or activity upon which the primary violation is predicated.

43.    As a result of the foregoing violations, Graham seeks damages to the maximum extent allowable against each Defendant jointly and severally and, in addition, his attorney's fees and costs.

<u>**COUNT THREE: COMMON-LAW FRAUD**</u>
**(against Huffman)**

44.    Huffman representations to Graham, including:

  (1)    That the Exchange Shares would be freely transferrable six months from the date of HempTech's issuance;

  (2)    That the Exchange Shares would be freely transferrable one year after the date of HempTech's issuance; and

  (3)    That the only terms or conditions pertaining to Plaintiff's sale of securities issued to him were set forth in the Exchange Agreement.

45.     These representations were false, false when made, and made with knowledge of their falsity or with reckless disregard for their truth. Huffman either knew that the shares should have been immediately transferrable or transferrable within one year of tender of their consideration yet represented that the Exchange Shares would have to be held for a period of either six months, then one year, then longer to comply with Rule 144. Such representations were made with knowledge of their falsity or with reckless disregard their truth. They were also material and caused Graham to enter into the Exchange Agreement and, later, wait for the one-year period Defendants claimed to be applicable to expire before enforcing his legal rights rather than enforcing them sooner. Graham has suffered resulting injury, including by delaying selling his Exchange Shares and delayed enforcing his legal rights with respect to the transferability of such shares, and in the interim, HempTech's stock price has declined.

## COUNT FOUR: LEGAL MALPRACTICE
### (against Huffman)

46.     As Graham's lawyer, Huffman owed him a duty of care.

47.     Huffman breached that duty of care, thereby committing malpractice, by failing to properly advise Graham as to when Exchange Shares would be transferrable while meeting the safe-harbor requirements of Rule 144, failing to advise Graham about provisions that could have been included in the Exchange Agreement to facilitate over-the-counter sale of the Exchange Shares, and by failing to include such provisions in the Exchange Agreement.

48.     Such negligence was of such a degree as to constitute gross negligence.

49.     As a proximate result of Huffman's malpractice, Graham has suffered damages, including from being prevented from freely transferring his shares, and seeks to recover his damages, along with exemplary damages.

## COUNT FIVE: BREACH OF FIDUCIARY DUTY
### (By Graham against Defendants)

50.    As Graham's lawyer, Huffman owed him fiduciary duties, including duties of loyalty, candor, full disclosure, fair and honest dealing, and a duty to refrain from self-dealing. HempTech and Talari likewise owed Graham fiduciary duties as his agent in effectuating transfer of Exchange Shares, including the duty to act solely for the benefit of Graham in all matters connected with such agency.

51.    Huffman breached such duties by failing to disclose Graham's full rights regarding the transferability of the Exchange Shares, by initially leading Graham to believe that the Exchange Shares would be restricted for a shorter period of time than he later claimed, and by leading Graham to believe that he and HempTech would not hold up the sale of a portion of the Exchange Shares once they had been held for one year after HempTech's issuance. Huffman further breached his fiduciary duties to Graham by taking the position on behalf of HempTech that the Exchange Shares would need to be held for a period longer than one year from HempTech's issuance to meet the requirements of Rule 144 and preventing Graham's sale of Exchange Shares, thereby taking a position adverse to his own client. HempTech and Talari also breached such duty by failing to take action necessary to effectuate the transfer of Graham's Exchange Shares.

52.    As a result of such breaches of fiduciary duty, Graham seeks to recover his actual damages and exemplary damages. In addition, or in the alternative, Graham requests a constructive trust on all proceeds, funds, or property Defendants have obtained as a result of the breach and disgorgement of all profits received as a result of their breach.[6]

---

[6] *See Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999).

## COUNT SIX: BREACH OF CONTRACT
### (against HempTech and Talari)

53.     The Exchange Agreement is a valid agreement between Graham and HempTech. Additionally, Graham and Huffman also had a valid agreement under which Huffman agreed to provide an opinion letter which would allow the deposit and sale of Exchange Shares.

54.     HempTech materially breached the Exchange Agreement by subjecting Exchange Shares to greater transfer restrictions than those permitted under the express terms of the Exchange Agreement. HempTech further breached by failing to enable—and actively preventing—Graham from realizing the full benefits to which he was entitled under the Exchange Agreement. Huffman likewise breached by failing to provide an opinion letter to enable the deposit and sale of those shares.

55.     Graham seeks recovery of all damages as a result of these breaches.  In addition, Graham seeks injunctive relief enjoining further breach.

## COUNT SEVEN: TORTIOUS INTERFERENCE WITH EXISTING CONTRACT
### (against Huffman)

56.     The Exchange Agreement is a valid contract between Graham and HempTech.

57.     Huffman has willfully and intentionally interfered with the Exchange Agreement by preventing Graham from selling the Exchange Shares he received under the Exchange Agreement on the open market, including by misrepresenting that Graham would have to hold the shares for six months or one year after HempTech's issuance before being able to sell them and by refusing to provide a legal opinion to enable him to sell such shares.

58.     In so doing, Huffman has acted willfully and intentionally to serve his own personal interests at HempTech's expense.

59.     Graham has incurred actual damage or loss as a result of Huffman's intentional

interference. He has been prevented from being able to sell Exchange Shares, and, in the meantime, the stock price has declined.

## COUNT EIGHT:  VIOLATION OF NEV. REV. STATS. SECTION 104.8401
### (against HempTech)

60.     Graham presented Stock Certificate No. 1891 to HempTech and requested that transfer of the shares it represented be registered.

61.     Under the terms of the security, Graham was eligible to have the security re-registered in his name, without restrictive legend, which he needed in order to effectuate a transfer or resale of the shares.

62.     The instruction was made by the appropriate person or by an agent who had actual authority to act on behalf of the appropriate person.

63.     Reasonable assurance was given that the endorsement or instruction was genuine and authorized.

64.     Any applicable law relating to the collection of taxes had been complied with.

65.     The transfer did not violate any restriction on transfer imposed by the issuer in accordance with Section 104.8204 of the Nevada Revised Statutes.

66.     A demand that the issuer not register transfer had not become effective under Section 104.8403 of the Nevada Revised Statutes, or the issuer had complied with subsection 2 of that section but no legal process or indemnity bond was obtained as provided in subsection 4 of that section.

67.     The transfer was rightful.

68.     HempTech has refused to allow deposit and transfer of the shares although under a duty to register a transfer of the security.

69.     As a result of the foregoing, Graham seeks to recover his loss resulting from unreasonable

delay in registration or failure or refusal to register the transfer. Graham further seeks injunctive relief compelling HempTech to provide all documents and instructions necessary to enable Graham to deposit and sell the shares represented by such share certificate.

## COUNT NINE: DECLARATORY JUDGMENT
### (against HempTech)

70.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, Graham seeks a declaration as to (1) the applicability of Rule 144 as it relates to the transferability of the Exchange Shares; and (2) the meaning of Paragraph 2a of the Exchange Agreement.

71.     Specifically, Graham seeks a declaration as to:

a.      The applicable holding period, including its start date, for the Exchange Shares, such that they meet the safe harbor requirements of Rule 144 and can be freely traded on over-the-counter markets; and

b.      The proper interpretation and enforceability of Section 2a of the Exchange Agreement, including the limitation, if any, it requires as to the transferability of the Exchange Shares, specifically that (i) there is nothing in the Exchange Agreement or Rule 144 that prohibits Plaintiff from freely transferring and selling the Exchange Shares that he owns; and (ii) at the present time, there is nothing in the Section 2a of the Exchange Shares, nor in Rule 144 to the extent it is incorporated by reference, which would prevent the sale of such shares, including but not limited to their sale on over-the-counter markets.

72.     Graham further requests his costs in bringing such claim. *See* 28 U.S.C. § 2202.

## VI.     EXEMPLARY DAMAGES

73.     Defendants are liable for exemplary damages because the harm for which Graham seeks redress results from fraud, malice, or gross negligence. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a).

## VII.    ATTORNEY'S FEES

74.    Plaintiff seeks his reasonable attorney's fees and costs incurred in connection with bringing

these claims. *See* Tex. Rev. Civ. Stats. art. 581-33.

## VIII.   JURY DEMAND

75.    Plaintiff hereby demands a trial by jury on all issues so triable.

## IX.    RELIEF REQUESTED

76.    Plaintiff requests judgment against all Defendants and that they be awarded the following

relief:

1. A preliminary injunction restraining HempTech from wrongfully interfering with free transfer of Exchange Shares and ordering HempTech to provide all documents and instructions to the transfer agent necessary to allow deposit and sale of Exchange Shares;

2. Any other equitable relief to which Plaintiff would be entitled, including imposition of a constructive trust on any money or other property wrongfully obtained by Defendants and disgorgement of such unjust enrichment;

3. All actual, general, specific, and consequential damages;

4. Pre- and post-judgment interest;

5. Attorney's fees and costs; and

6. All such other and further relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**TAYLOR DUNHAM AND RODRIGUEZ LLP**
301 Congress Ave., Suite 1050
Austin, Texas 78701
512.473.2257 Telephone
512.478.4409 Facsimile

By:   /s/ David E. Dunham
        David E. Dunham
        State Bar No. 06227700
        Email:  ddunham@taylordunham.com

Hannah M. Vahl
State Bar No.24082377
Email:  hvahl@taylordunham.com

**ATTORNEYS FOR PLAINTIFF**