IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN F. GRAHAM, SR. | § | |
| | § | |
| V. | § | Case No. A-17-CV-536 LY |
| | § | |
| CRAIG A. HUFFMAN, et al. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The District Court has referred Defendants' Motions to Dismiss (Dkt. Nos. 29, 30, & 36) to the undersigned for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules. The Court held a hearing on the issue of whether to transfer this case pursuant to 28 U.S.C. § 1404(a) on February 21, 2017 at 10:00 a.m.

**I. GENERAL BACKGROUND**

Plaintiff John Graham, Sr. sues Defendants Craig Huffman, HempTech Corporation, and its Chief Executive Officer Sam Talari. Graham, an Austin resident, contends that he reached out to Huffman—a Florida attorney with whom he had previous dealings—to find a buyer for his company Building Turbines, Inc. Huffman eventually introduced Graham to HempTech as a potential buyer. HempTech and its CEO, Talari, are both residents of St. Petersburg, Florida. The parties, after telephone and email negotiations, concluded an Exchange Agreement by which Graham would be given shares in HempTech in exchange for his interest in Building Turbines. Graham maintains that he was informed that he would be permitted to transfer his shares in HempTech after six months; after this period passed, he was told he could transfer after twelve months. This period again passed,

and Graham alleges he was told that the shares could not be sold at that time. Graham also alleges that during the negotiations for the purchase of Building Turbines, Talari and Huffman misrepresented HempTech's financial health. Finally, Graham asserts that Huffman, acting as counsel for both HempTech and Graham, failed to disclose a conflict of interest. Though he waived the "known" conflict in the Agreement, he argues that he was unaware of Huffman's prior representation of HempTech in other matters. Graham therefore brings claims for: (1) violation of the Exchange Act § 10(b) and Rule 10b-5; (2) violation of the Texas Securities Act; (3) common law fraud and fraud by non-disclosure; (4) negligent misrepresentation; (5) conversion; (6) legal malpractice; (7) breach of fiduciary duty; (8) breach of contract; (9) tortious interference with existing contract; (10) violation of Nev. Rev. Stats. §§ 104.8407, 14.8401; and (11) declaratory judgement.

The Defendants moved to dismiss based on Rule 12(b)(2), 12(b)(3), and 12(b)(6). Huffman and Talari alternatively moved to dismiss or transfer venue under § 1406. After reviewing the motions and responses, the Court *sua sponte* scheduled a hearing to discuss whether transfer under § 1404 to the Tampa Division, Middle District of Florida would be appropriate in this case.

## II. ANALYSIS

### A. Standard of Review

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*,

376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc.* (*"Volkswagen II"*), 545 F.3d 304, 313–15 (5th Cir. 2008) (internal quotation marks omitted), *cert. denied*, 555 U.S. 1172 (2009).

The starting point on a motion for transfer of venue is determining whether the suit could have originally been filed in the destination venue. *Id.* at 312. If it could have, the focus shifts to whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action, considering various private and public interests. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Although the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. In fact, the Fifth Circuit has noted that "none . . . can be said to be of dispositive weight." *Id.* at 313–15 (internal quotations omitted). Despite the wide array of private and public concerns, a court must engage in a "flexible and individualized analysis" in ruling on a motion to transfer venue. *Stewart*, 487 U.S. at 29.

The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. Moreover, "when a plaintiff is not a resident of the chosen forum, or the operative facts underlying the case did not occur in the chosen forum, the court will not give as much deference to a plaintiff's choice." *Apparel Prod. Servs. Inc. v. Transportes De Carga Fema, S.A.*, 546 F. Supp.2d 451, 453 (S.D. Tex. 2008). Transfer under § 1404(a) requires a lesser showing of inconvenience than transfer based on forum non conveniens. *Volkswagen II*, 545 F.3d at 314. The movant need not show the *Gilbert* factors substantially outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one.

**B.    Application**

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit originally could have been filed in the destination venue, here, the Tampa Division, Middle District of Florida. Venue is governed by 28 U.S.C. § 1391(b), which provides that venue is proper in a judicial district: (1) where any defendant resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district where the action may otherwise be brought, in any judicial district in which any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). All of the Defendants reside in, and a substantial part of events occurred in, the Middle District of Florida. This case clearly could have

been brought in the Middle District of Florida. Thus, the Court must now address the private and public factors to determine if transfer to the Tampa Division, Middle District of Florida is warranted.

### 1.     Private Interest Factors

The first private interest factor is the relative ease of access to sources of proof. *Volkswagen II*, 545 F.3d at 315.  Here, the Defendants are all located in the Middle District of Florida, and the closing of the Exchange Agreement—which Graham traveled to Florida to participate in—occurred in that district.  Similarly, all records from the companies that Huffman has cited as potential witnesses (aside from LegalZoom, Inc.) are located in St. Petersburg.  On the other hand, Graham contends that his documents relating to the dispute are located in Austin, Texas, and that a CPA he plans to call to testify regarding the financial health of HempTech resides in Houston, Texas.  He also identifies numerous witnesses from Texas that he claims will corroborate the alleged misrepresentations.  These witnesses, however, are minor witnesses at best.  They are apparently other shareholders of HempTech, and will corroborate some of the facts alleged by Graham.  They are not witnesses to any of the events Graham bases his case on.[1] Dkt. No. 73-1 at 3-5. Graham has added twenty potential witnesses located in Texas, nine of whom provided Declarations for the hearing.[2]  *Id.*  Of the nine Declarations from Texas residents, only two mentioned any direct knowledge of the facts of *Graham's* claims, one of whom appears to have traveled to Florida with

---

[1]Indeed, the declarations provided by these potential witnesses read more as support for their own claims against the Defendants than as declarations about any inconvenience they might experience in testifying in Tampa, Florida.

[2]Two of the Declarations were from Colorado residents. Though both contend that travel to Austin is easier than travel to Tampa, both will be coming from out-of-state.

Graham.³  *Id.*  The other witnesses have similar disputes with the Defendants, and are identified for the sole purpose of corroborating statements made by Talari and Huffman to Graham.  This is, at best, a minor issue, and can be proven without live testimony, if necessary—either by deposition or records, such as the emails provided at the hearing. Given that the vast majority of the communications occurred over phone and email, and the corporate records are all located in St. Petersburg, the ease of access to proof weighs in favor of transferring the case to the Middle District of Florida.

The second and the third factors, the availability of compulsory process and cost of transportation for witnesses also weigh in favor of transfer.  As noted, all of the Defendants in this case reside within the Tampa Division, Middle District of Florida. Defendants further identify several employees, also located within the Tampa Division, that might be called to testify regarding the closing of the Exchange Agreement.  Similarly, Graham has identified the Chief Operation Officer of HempTech and three entities related to HempTech as potential witnesses, all of which are located in St. Petersburg, Florida.  The only witnesses listed on his initial disclosures from Austin, Texas are a representative of Legal Zoom, Inc.—which incorporated Tinkerer's Obsession Labs, LLC—and Darin Siefkes—Graham's attorney. On the other hand, Graham has identified a number of witnesses that he wishes to call to corroborate his claims; two are located in Colorado, but the majority are located in Texas.  *See* Dkt. No.73-1 at 3–5.  As the Tampa Division is more than 100 miles from Texas and Colorado, each of these witnesses would be outside the subpoena power of

---

³Of the two witnesses that participated in conversations with Huffman and/or Talari, one witness actually identified an in-person meeting with Graham, Talari, and Huffman. Dkt. No. 73-3 at 2.  As Talari stated in his Declaration that the only in-person meeting that occurred with Graham took place in St. Petersburg, Florida for the closing of the Exchange Agreement at issue (Dkt. No. 71 at 1), the Court assumes this person witnessed the conversation in Florida.

the Tampa Division for depositions and hearings. *See* FED. R. CIV P. 45(c). As the Fifth Circuit explained in *Volkswagen I*, 371 F.3d at 205, if the distance between the proposed venue and the current venue is more than 100 miles, the factor of inconvenience increases in direct relationship to the distance traveled. As the Court reasoned:

> Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*Id.*

As noted above, the relevance of this testimony is questionable given the lack of direct knowledge of Graham's communications. Moreover, even assuming the testimony is relevant and probative, it is not entirely clear that any of the witnesses would need to be subpoenaed to appear. Though it is relevant to the venue consideration whether Graham would like to call certain witnesses, it seems likely that the witnesses would still participate if the trial were to occur in Tampa, Florida, as most are family and friends of Graham and volunteered the Declarations provided at the hearing. Additionally, Graham would clearly have the opportunity to depose the witnesses in Austin, and any of the witnesses that wished to travel to Tampa, Florida may do so. Finally, the Court notes that the witnesses were not added to Graham's initial disclosures until *after* the Court indicated it was considering transfer of the case. Thus, the second and third factors weigh in favor of transfer.

Finally, the Court is to examine "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. All of the Defendants and most of the relevant witnesses reside in the Tampa Division. Much of the conduct at issue in this case

occurred in the Tampa Division, though Plaintiff received the calls and emails in the Austin Division. There does not appear to be anything about trying the case in the Austin Division that would make it any easier, more expeditious or less expensive than if it were tried in Tampa. Accordingly, this factor also supports transfer.

### 3. Public Interest Factors

The public interest factors also counsel in favor or transfer. The first factor, administrative difficulties arising from court congestion is neutral. As presented at the hearing, both the Middle District of Florida and Western District of Texas have relatively equal time periods from filing to trial. Dkt. No. 73-2 at 21–22. Though, as the Court noted at the hearing, the Austin Division is currently operating at reduced strength, and is one of the busiest of divisions in the Western District, there are no clear statistics on the Tampa Division of the Middle District of Florida to make a comparison. Thus, this factor neither weighs in favor nor against transfer.

The local interest factor clearly favors transfer. Graham argues that this factor, in particular, weighs in favor of retaining the case. In support, Graham cited to a number of cases finding a significant local interest in attorney-client disputes as well as claims for misrepresentations made to citizens of that district. Dkt. No. 74-1 at 54–57. However, the facts of this case tell a different story. The dispute arose when *Graham* reached out to *Huffman* in Florida. *See Volkswagen I*, 371 F.3d at 206 (finding that "the 'local interest in having localized interests decided at home,' weighs heavily in favor of the Western District of Texas."); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005) ("Moreover, Lubbock has a strong interest in this case because the case arises out of events occurring in Lubbock."). Graham contacted a Florida attorney to find a buyer for Building Turbines; Huffman provided as buyer a corporation whose principal place of business

8

is in Florida; the parties closed the Exchange Agreement in Florida, and the Exchange Agreement is governed by Florida law; and both Talari and Huffman contacted Graham solely by email and phone from Florida. Thus, this appears to be a case with significant local interests in Tampa, Florida. And to the extent Graham contends that Texas law will govern the malpractice claims against Huffman, that is less than clear to the undersigned. As noted, Huffman did all of his work in Florida, after being contacted by Graham in Florida. The deal closed there. In these circumstances, Florida would appear to have a greater local interest in regulating the behavior of Huffman, an attorney licensed in Florida, than Texas does. Indeed, the only factor weighing in favor of Austin, Texas is the fact that Graham resides here. Accordingly, this factor also favors transfer.

Finally, the last two public interest factors are neutral. Graham's claims are not confined solely to either Texas or Florida law, and one claim is based on a Nevada statute. Moreover, transfer will not cause unnecessary issues with conflict of laws or in the application of foreign law.

Weighing all of the private and public factors, the Court concludes that the Tampa Division of the Middle District of Florida is a more convenient venue for this case than this Court. Accordingly, this case should be transferred pursuant to 28 U.S.C. § 1404(a).

### III. RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the District Court **TRANSFER** this case to the Tampa Division of the Middle District of Florida, and leave all other motions pending for resolution in the transferee court.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of February, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE